UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD MESSIER, et al. | : | |
|     Plaintiffs, | : | |
| | : | |
| | : | |
| v. | : | No. 3:94-CV-1706(EBB) |
| | : | |
| | : | |
| SOUTHBURY TRAINING SCHOOL, et al. | : | |
|     Defendants. | : | |

RULING ON THE AMOUNT OF ATTORNEYS' FEES, COSTS AND EXPENSES
THAT PLAINTIFFS' COUNSEL IS TO BE AWARDED

      This ruling supplements the Court's January 2013 ruling regarding the first part of the plaintiffs' instant fee petition [Doc. # 1146], see infra.  The singular question remaining for the Court's determination is: What award of attorneys' fees, costs and expenses is reasonable in light of plaintiffs' limited success in this class action suit?  The plaintiffs, who were and are residents of a Connecticut institution for the mentally disabled called Southbury Training School ("STS"), brought this litigation seeking injunctive relief for various alleged constitutional and statutory violations in connection with the conditions, services and programs at STS, as well as their continued placement there.  Of these four general subject areas, the plaintiffs prevailed on only the last one: community placement.

      In its prior ruling, and by agreement of the parties, the Court addressed the "degree of success" the plaintiffs achieved.  The Court determined that plaintiffs' counsel achieved

"excellent results" with respect to the successful community placement claims, but also found that the claims on which the plaintiffs did not prevail -- medical care, protection, and habilitation -- were factually and legally distinct and thus severable from the successful claims. Consequently, and as the Court held in that ruling, the attorneys' fees, costs and expenses to which plaintiffs' counsel is legally entitled must be limited to the time that counsel reasonably expended on the successful claims. The instant ruling, in turn, calculates the dollar amount of plaintiffs' counsel's award, which, in view of the restriction just mentioned, as well as other relevant factors and arguments raised by the parties and discussed below, the Court finds is a total sum of $2,724,763.28.

## BACKGROUND

Because, as stated, this ruling supplements the Court's January 2013 ruling on the first part of the plaintiffs' fee petition, the Court presumes the parties' familiarity with the relevant facts and law and will only recite either to the extent necessary to explain its decision here.

Plaintiffs filed the initial complaint in this class action suit in October 1994 alleging, as stated, that the defendants violated class members' constitutional and statutory rights on the basis of the conditions, services and programs at STS, as well as their continued placement there. Following a 123-day bench trial held in 1999, the Court ruled in 2008 that the defendants had deprived class members of their procedural due process and statutory rights to professional judgment regarding the appropriateness of individual placements in a more integrated setting, i.e., "community placement," as well as their statutory right to be free of discrimination with respect to having such placements made. Messier v. Southbury Training Sch., 562 F. Supp. 2d 294, 338-39, 343-44 (D. Conn. 2008). However, the Court also found that the plaintiffs could

not prevail on any of their other claims because -- first and foremost -- those claims were moot by reason of the then-ongoing litigation in United States v. Connecticut, No. 3:86-cv-252 (D. Conn. 1986) ("Connecticut litigation").  Messier, 562 F. Supp. 2d at 303-04.

Following the Court's determination on liability, the parties reached a settlement in November 2010 regarding the remedies the defendants would be required to implement as to the community placement violations.  Order Re: Settl't Agreem't [Doc. # 1054] at 13.  Then, in February 2011, plaintiffs' counsel filed the instant motion for attorneys' fees, costs and expenses, which, as amended through October 1, 2014, requests a total award of $7,676,839.09.  See [Doc. #s 1067, 1083, 1100, 1101, 1160, 1162, 1175, 1180 & 1190].  As the Court explains in more detail below, this "raw figure" amount is subject to several modifications that, taken together, result in an overall reduction of approximately 65% and yield the aforementioned adjusted aggregate award of $2,724,763.28.

DISCUSSION

As an initial matter the Court notes that the threshold determination here -- and only remaining issue -- is what fee is reasonable.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). In making that determination, the Court need not -- and, indeed, will not -- become mired in the most picayune of disputes between the parties.  As Hensley instructs, "[a] request for attorney's fees should not result in a second major litigation."  Id. at 437.  The parties, however, have not heeded that admonition.  Plaintiffs' initial fee petition has been extensively amended at least four times and the total sum of briefs and exhibits filed by the parties easily exceeds 1,500 pages. Rather than continue to indulge this mania, as it were, the Court will render its decision in broad strokes that, nonetheless, explain with sufficient detail its requisite "reasonableness"

determination.

Secondly, a brief note on the essential structure of the plaintiffs' fee petition is in order. The petition contains numerous timekeepers but their number can be broken into three essential camps: Attorney David Shaw ("Shaw") and members of his law office, who served as lead counsel; The Public Interest Law Center of Philadelphia ("PILCO") and its attorneys, including Attorneys Frank Laski and Judith Gran (both of whom continued to work and bill on this matter even after their association with PILCO ended); and the law firm of Pepper Hamilton LLP, which was retained by PILCO, and has submitted billing, only in connection with preparing PILCO's fee petition. In addition, and as already alluded to, this litigation has lasted -- soup to nuts -- approximately 20 years, from July 1, 1994 to October 1, 2014, and, much as the parties have done in their respective briefing, will be divided and referred to by the Court as three phases: (1) the "liability phase," which went from approximately July 1, 1994 to June 5, 2008, the date on which the Court entered its ruling on liability; (2) the "remedial phase," which went from approximately June 6, 2008 to November 18, 2010, the date on which the Court approved the parties settlement regarding remedies; and (3) the "fee petition phase," which went from November 19, 2010 to October 1, 2014, which is the date that the last amendment to the plaintiffs' fee petition was filed. The liability phase, which spanned approximately 14 years, constitutes 70% of the time and costs expended by counsel in this litigation. The remedial and fee petition phases each lasted approximately 3 years and constitute the remaining 30% of the time and costs expended by counsel. The relative weights of these phases, as will become apparent below, plays a key part in the Court's determination of what is a reasonable fee.

A. <u>Reduction to Account for the Losing Claims</u>

As stated, the Court has already determined that plaintiffs are prevailing parties and are entitled to recover a reasonable amount of attorneys' fees, costs and expenses. Again, the wrinkle is that plaintiffs were successful in only one of the four subject areas on which their claims were based: community placement. And because the Court has determined that the losing claims are factually and legally distinct -- and thus severable -- from plaintiffs' winning claims, the losing claims must be treated as if they had been raised in a separate lawsuit and cannot be part of the fee award. Indeed, the parties agree that any time spent by counsel on the losing claims must be disregarded for purposes of calculating an award and that a reduction of some kind must thus be applied to the billing that plaintiffs' counsel submitted.

The complication is that counsel's billing does not segregate the time counsel spent on the winning claims from the time counsel spent on the losing claims. Counsel thus suggests that an across the board reduction of 30% to its billing for the liability phase is warranted. The defendants, however, counter that counsel's proposed reduction of 30% is not sufficient and does not aptly reflect the undisputed fact that counsel succeeded in only one of the four subject areas in this lawsuit. The defendants maintain that the Court should instead apply a reduction of between 70% and 80% to counsel's billing for that phase of the litigation. For the reasons that follow, the Court finds that the appropriate reduction to the liability phase portion of counsel's billing is 75%.

As <u>Hensley</u> instructs, where as here, the claim on which the plaintiffs succeeded is severable from their losing claims, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for [plaintiffs'] limited

5

success[,]" i.e., the time counsel spent on the severable claims. 461 U.S. at 436-37. "There is no precise rule or formula for making [such] determinations." Id. at 436. In this case, because counsel was not able to segregate the time it spent on the successful claims from the time it spent on the losing claims -- at least not for the liability phase portion of its billing -- the Court is left with no other practical choice but to apply a mechanical across-the-board reduction of 75% to counsel's billing for that period of time. As stated, a reduction of 75% for that part of counsel's billing is appropriate given that plaintiffs succeeded on only the community placement claims, which constitute but one of the four subject areas on which this class action was based.

The "raw figure" submitted by plaintiffs' counsel for all work performed and expenses incurred in this litigation to the time period before February 8, 2011 is $6,698,684.32. [Doc. # 1067] at 10-14. This figure represents fees and costs submitted by Shaw, PILCO, Laski and Gran. The Court, however, must not apply the 75% reduction to that entire sum because the billing for the time up February 8, 2011 also encompasses the remedial phase of the litigation. And as the defendants concede, in contrast to counsel's work during the liability phase, all of the work that counsel performed during the remedial phase was connected to the community placement claims on which plaintiffs succeeded and so is not subject to a reduction on that basis. The Court, then, must first approximate what percentage of counsel's billing, for the time period before February 8, 2011, is attributable to work during the liability phase versus the remedial phase.

As stated, the liability phase of the litigation lasted approximately 14 years, from July 1, 1994 to June 5, 2008; and the remedial phase lasted approximately 2.5 years, from June 6, 2008 to November 18, 2010. Counsel's billing, then, for the time period encompassing both the

liability and remedial phases, i.e., for the time period before February 8, 2011, covers a span of approximately 16.5 years. The remedial phase, in turn, represents approximately 15% of that time. The Court, then, will apportion 15% of $6,698,684.32, i.e., $1,004,802.65, of counsel's billing for its work and expenses up to February 8, 2011, to the remedial phase and will not subject that sum to the 75% reduction. The reduction, instead, will only be applied to the balance, i.e., $5,693,881.67, which yields an awardable amount with respect to the liability phase of $1,423,470.42. See [Doc. # 1067] at 10-14.

B. Additional Reduction for Excessive, Redundant and/or Unnecessary Time and Expense

In addition to this initial reduction, the defendants maintain that another 20% reduction is necessary as counsel's billing shows excessive, redundant and/or unnecessary fees, costs and expenses. [Doc. # 1168] at 16-44. In principal part, the defendants submit that during the liability phase counsel: (1) spent an excessive amount of time on direct and cross-examination at trial; (2) was inefficient, in that it engaged an excessive number of attorneys to work on this matter -- each of whom had to be brought up to speed, which consumed billable time and also meant that counsel had to spend more time conducting meetings and making phone calls in order to keep everyone apprised; and (3) filed unnecessary motions. Id. The defendants also maintain that various billing entries by counsel "are too vague to be properly evaluated" for reasonableness, id. at 39, and make it difficult to determine whether such entries even pertain to this case, id. at 41.

The Court agrees, at least in principle, with the defendants' foregoing objections. Plaintiffs' fee petition -- even once corrected to account for the losing claims -- reflects some excessiveness and redundancies, but not so much so as to warrant a reduction of 20% with

7

respect to all phases of the litigation. For one thing, the vast majority of these objections relate to the liability phase portion of counsel's billing and thus it would not be reasonable to apply the same percent reduction to the subsequent remedial and fee petition phases -- especially because the billing for those subsequent periods does not reflect the same degree of excessiveness, inefficiency or vagueness. Of course, such a dichotomy is not to be unexpected since the liability phase of most any litigation of this kind will involve more of the type of work that by its nature produces inefficiencies, e.g., conducting research on novel legal issues, crafting persuasive and well-grounded legal arguments and identifying and interviewing expert witnesses. By contrast, the remedial and fee petition phases did not involve the same degree of "separating the wheat from the chaff," as it were, because at those later points in the litigation the relevant facts and legal issues had been sufficiently fleshed out such that counsel's time and effort was necessarily more directed and efficient. Thus, and in light of its previous finding that counsel obtained "excellent results" with respect to the community placement claims, see [Doc. # 1146], the Court imposes an additional reduction of only 10% on counsel's billing during the liability phase to account for counsel's excessive and, in some instances, vague billing; thus yielding an adjusted award of $1,281,123.37[1] for its work during that phase.

This does not mean that counsel's billing for the subsequent two phases should not also be reduced to some extent. Counsel's initial fee petition and subsequent amendments thereto included billing that pertained to the unsuccessful claims, which, as already explained, is not compensable for any purpose -- including time spent preparing the fee petition with respect to such claims. In addition, and as the defendants point out, some of counsel's billing entries for the

---

[1] This results from deducting 10% from $1,423,470.42, see supra p.7.

remedial and fee petition phases appear to be excessive and/or vague. For these reasons, the Court imposes a 5% reduction to counsel's billing for the remedial phase, and a 50% reduction to counsel's billing for the fee petition phase -- because, again, the fee petition shows that counsel spent significant time preparing and arguing for a fee award that included time spent on the losing claims. The result, then, is an adjusted award of $1,443,639.91,[2] for counsel's time, costs and expenses during the remedial and fee petition phases.

C. Hourly Rates

The defendants also maintain that counsel charged hourly rates that are excessive and must be reduced because they are appreciably greater than the average rate counsel charges and is actually paid in the ordinary course of their respective practices. See [Doc. # 1168] at 45-53. In particular, the defendants maintain that the discovery they conducted shows that each of the senior attorneys who represented plaintiffs earn on average approximately 20% less than the respective hourly rates they billed in this case. See id.

The Court has already ruled that the use of current prevailing market rates is appropriate for calculating the lodestar amount because, given the protracted nature of this litigation, doing so compensates counsel for the delay in payment of fees it previously earned. See Ruling, dated Oct. 18, 2011 [Doc. # 1124] at 1-2. Counsel submitted its initial fee application -- which covered a span of approximately 16 years -- in February 2011. In the intervening four years since then, it has submitted several amendments to its application; but the amendments do not each reflect adjustments to the hourly rates for past billing and thus do not account for applicable changes in

---

[2] This is the sum of the remedial phase award, $1,004,802.65, see supra p.7, reduced by 5%, and the fee petition phase award, $978,154.77, compare [Doc. # 1067] with [Doc. # 1162] and see [Doc. #s 1160, 1180 & 1190], reduced by 50%.

prevailing market rates. Counsel's billing is instead composed of varying market rates from over the last four years, ranging from about, inter alia, $200 to $500 per hour for attorneys and from about $100 to $200 per hour for paralegals. Although the Court agrees, as the defendants contend, that these rates are somewhat in excess of the then-applicable prevailing market rates at any particular time and that they exceed what the record fairly shows counsel has received in similar matters, there is no need to actually make the downward adjustment of about 20% that the defendants request. This is because any such modification would be nullified by the complementary upward adjustment -- also of about 20% -- that would be required to update all of counsel's past billing to the now-higher prevailing market rates. As such, the Court leaves intact the hourly rates provided in counsel's fee petition and amendments thereto. And for the same reason, the Court will not apply interest to the fee award since the excess in the hourly rates that the Court is using already compensates counsel for any loss in the time-value-of-money that an award of interest would cover. Accord Parties' Briefing [Doc. #s 1126, 1129 & 1133.]

## CONCLUSION

For the foregoing reasons, the Court finds that the reasonable amount of attorneys' fees, costs and expenses [Doc. #s 1067, 1083, 1100, 1101, 1160, 1162, 1175, 1180 & 1190] to which plaintiffs are entitled is an adjusted aggregate award of $2,724,763.28. As noted, this amount represents 35% of the $7,676,839.09 that plaintiffs' counsel requested.[3]

---

[3] The 35% percent figure is not anomalous. It aptly and reasonably reflects the reasonable fee in this case given that the plaintiffs succeeded on only one of the four subject areas, i.e., a success rate of 25%, and the fact that counsel's billing was not evenly weighted throughout the three litigation phases, supra p. 4, and thus not equally subject to the same percentage reductions.

SO ORDERED.

    /s/
ELLEN BREE BURNS
SENIOR UNITED STATES DISTRICT JUDGE

Dated this 27th day of March, 2015 at New Haven, Connecticut.