UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RICHARD MESSIER *et al.*,
    *Plaintiffs*,

v.

SOUTHBURY TRAINING SCHOOL *et al.*,
    *Defendants*.

No. 3:94-cv-01706 (VAB)

**RULING AND ORDER ON MOTION TO CORRECT RULING ON ATTORNEY'S FEES, COSTS, AND EXPENSES TO BE AWARDED TO PLAINTIFFS COUNSEL**

Residents of Southbury Training School, an institution for the mentally disabled in Connecticut, brought this class-action case against Southbury Training School, the Director of Southbury Training School, and the Commissioner of the Connecticut Department of Developmental Services[1] (collectively "Defendants"), seeking injunctive relief for alleged constitutional and statutory violations relating to the conditions, services, and programs at Southbury Training School, the appropriateness of individual placements in a more integrated

---

[1] Although the caption of this case names the Commissioner of the Connecticut Department of Mental Retardation as a Defendant, the Court takes judicial notice that title of the Department has since changed to the Department of Developmental Services. *DMR Changes Name October 1st*, www.ct.gov, http://www.ct.gov/dds/cwp/view.asp?Q=395946&A=2645 (last visited June 28, 2018); *see also* Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute . . . ."); *Reed Const. Data Inc. v. McGraw-Hill Companies, Inc.*, 638 Fed. App'x 43, 47 (2d Cir. 2016) (taking judicial notice under Fed. R. Evid. 201(b) that a incorporated and headquartered in Georgia because the fact was "capable of accurate and ready determination" by way of the Georgia Secretary of State's website (quoting *Reed Const. Data Inc. v. McGraw-Hill Companies, Inc.*, 638 Fed. App'x 43, 47 (2d Cir. 2016))); *cf. Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016) (taking judicial notice under Fed. R. Evid. 201(b) of a new Guidance for Industry issued by the U.S. Food and Drug Administration "because the Guidance is publicly available and its accuracy cannot reasonably be questioned." (citing Fed. R. Evid. 201(b))).

setting ("community placement"), and the right to be free of discrimination with respect to having such placements made.

One of the attorneys for Plaintiffs, David C. Shaw, has moved for the Court to correct certain alleged errors in its March 27, 2015 Ruling on the amount of attorney's fees, costs, and expenses that Plaintiffs' counsel is to be awarded. ECF No. 1205.

For the following reasons, the motion is **DENIED**.

**I.     BACKGROUND**

The Court assumes familiarity with the factual background of the case and provides the procedural background that is necessary to decide this motion.

In 1994, Plaintiffs sued Defendants. ECF No. 1. After a bench-trial that lasted 123 days, in 1999, the Court ruled that Defendants had deprived class members of their procedural due process and statutory rights to professional judgment regarding the appropriateness of community placements, as well as their statutory right to be free of discrimination with respect to such placements. *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294 (D. Conn. 2008). Plaintiffs did not prevail on their remaining three claims. *Id.* at 303–04. Based on the Court's finding of liability on Plaintiffs' community placement claim, the parties reached a settlement on the issue of remedies. ECF No. 1054. Plaintiffs' motion for attorneys' fees and costs followed.[2] ECF No. 1067. The petition, as supplemented through October 2014, sought a total award of $7,676,839.09.

The Court ruled on Plaintiffs' motion in two parts. The first ruling addressed Plaintiffs' "degree of success" on the merits. With respect to the claim on which they prevailed—*i.e.*, the

---

[2] Plaintiffs amended the fees petition once and supplemented it a total of five times. ECF Nos. 1083, 1100, 1101, 1162, 1180, 1190.

2

community placement claim—Plaintiff's achieved "excellent results," but, because those claims were both factually and legally distinct from Plaintiffs' unsuccessful claims—*i.e.*, the medical care, protection, and rehabilitation claims—the Court determined that the lodestar calculation must be limited to the time Plaintiffs' counsel expended solely on the claim on which Plaintiffs prevailed. ECF No. 1146. The second ruling addressed what award of attorneys' fees, costs, and expenses was reasonable in light of Plaintiffs' limited success in this case. Having considered a number of factors, including time reasonably expended on successful claims, excessive, redundant or unnecessary time and expenses, excessiveness in rates sought, and loss in the time-value-of-money that an award of interest would cover, the Court awarded Plaintiffs an aggregate award of $2,724,763.28. ECF No. 1201.

The Public Interest Law Center of Philadelphia ("PILCO") and Mr. Shaw separately moved for the Court to correct what they alleged were errors in the Court's ruling awarding Plaintiffs attorneys' fees, costs, and expenses. ECF Nos. 1203, 1205. PILCO subsequently settled its portion of the fees award. *See* ECF No. 1282.

On the Court heard oral argument on July 3, 2018, at which the Court granted leave for the parties to file post-hearing submissions. ECF No. 1301. The parties submitted additional filings on July 20, 2018, ECF No. 1306, and on August 3, 2018, ECF. No. 1309, respectively.

The Court now addresses Mr. Shaw's motion.

## II.    STANDARD OF REVIEW

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

"The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citations omitted). A motion for reconsideration generally does not allow the moving party to revisit arguments that have already been presented before the court. *See Shrader*, 70 F.3d at 257 ("a motion for reconsideration should not be granted where the moving party seeks solely to relitigate an issue already decided.").

### III. DISCUSSION

Under 42 U.S.C. § 1988, "a court has discretion to 'allow the prevailing party, other than the United States, a reasonable attorney's fee' in a civil rights lawsuit." *James v. City of Boise, Idaho*, __ U.S. __, 136 S. Ct. 685, 686 (2016) (per curiam) (quoting 42 U.S.C. § 1988(b)). "The Supreme Court has held that a 'prevailing party' is one who has favorably effected a 'material alteration of the legal relationship of the parties' by court order." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 102 (2d Cir. 2009) (*quoting Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)); *see also Farrar v. Hobby*, 506 U.S. 103, 111 (1992) ("Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought.").

The court may reach a presumptively reasonable fee by calculating the lodestar figure: the product of the reasonable number of hours spent and the "prevailing market rates in the relevant community." *Perdue v. Kenny A ex rel. Winn*, 559 U.S. 542, 551 (2010). The prevailing market rates should take into account the rate for attorneys of "comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

There is a strong presumption that the lodestar figure is a reasonable fee, although a district court has discretion to enhance or lower the lodestar based on several different factors. *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see also Perdue*, 559 U.S. at 551 (2010) (listing factors courts may consider in deciding whether to enhance fee amounts); *Genn v. New Haven Bd. of Educ.*, No. 3:12-cv-00704 (CSH), 2017 WL 3022321, at *2 (D. Conn. July 17, 2017) (listing several factors that could merit reduction in fees, including vague, redundant, excessive or unnecessary time entries). "This presumption reflects the view that, because the lodestar calculation approximates a lawyer's compensation from a paying client, such a sum is 'sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case.'" *Watrous v. Borner*, 995 F. Supp. 2d 84, 87 (D. Conn. 2014) (quoting *Perdue,* 559 U.S. at 552)). "In light of this presumption, if the court excludes claimed hours from the calculation of the lodestar figure or 'augments or reduces th[at] figure it must state its reasons for doing so as specifically as possible.'" *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (quoting *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 99 (2d Cir. 1997).

To "prevent manifest injustice," *Virgin Atlantic Airways, Ltd.*, 956 F.2d at 1255, the Court allegedly must address three errors: (1) the failure to take into consideration dormant periods of time in the case; (2) the failure to use the most recent rate across all hours Mr. Shaw spent litigating this matter; and (3) the failure to take into consideration a substantial number of hours expended on the fee petition, which, when taken together, unduly reduce Mr. Shaw's award. The Court addresses each of these arguments in turn.

## A. Dormant Periods During the Litigation

Mr. Shaw does not take issue with the "appropriateness" of the Court's "overall approach" in calculating his attorney's fee award, including the various deductions the Court assessed or the Court's decision to use the litigation phase as a proxy for hours expended on Plaintiffs' successful claim and weighing the time expended accordingly. Shaw Reply Br. at 1. Rather, he argues that the case was "entirely dormant" for a number of years—approximately 6.3—and this time therefore should be excluded from the liability phase of the litigation. Excluding these years would reduce the liability phase of the litigation from 85% to 75% of the overall case, and his award would increase by $485,654.59 accordingly. Adding this amount to the award of $2,724,763.28 would increase the total award to $3,210,417.87, which is 41.8% of the $7,676,839.09 requested.

Defendants, on the other hand, argue that the Court is not required to come up with a precise formula or calculation, especially where, such as here, Plaintiffs' counsel was not able to disaggregate time it spent on successful claims from the time it expended on claims on which they did not prevail. The Court agrees.

It is well-settled that once it is determined that a party is entitled to fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley*, 461 U.S. at 433. In other words, "the determination of how much to trim from a claim for fees is committed to the [district] court's discretion." *Okla. Aerotronics, Inc. v. United States*, 943 F.2d 1344, 1347 (D.C. Cir. 1991) (quoting *Washington All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 857 F.3d 907, 910–11 (D.C. Cir. 2017)). With "no precise rule or formula for making these determinations," a district court may engage in a retail-level inquiry of specific hours that should

be eliminated, or, "it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. 436–37.

The Court chose the latter approach. Noting that the parties' submissions exceeded 1,500 pages, the Court used "broad strokes" in reaching its "reasonableness" determination. March 27, 2015, Ruling at 3–4. To structure the fees award, the Court, consistent with the parties' submissions, divided the cases into three phrases: (1) the "liability phase," which went from approximately July 1, 1994, to June 5, 2008, the date on which the Court entered its ruling on liability; (2) the "remedial phase," which went from approximately June 6, 2008, to November 18, 2010, the date on which the Court approved the parties settlement regarding remedies; and (3) the "fee petition phase," which went from November 19, 2010, to October 1, 2014, which is the date of the last supplement to the fees petition. The Court used "[t]he relative weights of these phases"—*i.e.* seventy, fifteen, and fifteen percent, respectively—to determine a reasonable fee award under the circumstances.

In doing so, the Court exercised its "equitable judgment." *Hensley*, 461 U.S. at 437. Mr. Shaw asks whether "it makes sense to count 6.3 years during which no litigation occurred at all" toward to the time it took to litigate this case, Shaw Reply Br. at 3, but the inquiry here is whether the Court "overlooked controlling decisions or factual matters that were put before it on the underlying motion." *Eisemann v. Greene*, 204 F.3d 393, 395 n.2 (2d Cir. 2000) (per curiam) (citation omitted). And he has not made such a showing. Reconsideration is inappropriate if it is merely a "second bite at a fully briefed and considered underlying ruling whose outcome disappointed one of the litigants. *Bouchard v. DHL Exp. (USA), Inc.*, No. 3:09-cv-01222 CSH, 2012 WL 32953, at *3 (D. Conn. Jan. 6, 2012).

The Court therefore declines to reconsider the matter.

### B.     Current Rates

Mr. Shaw also argues that the Court determined that Plaintiffs' counsel were entitled to fees at the current rate but failed to use current rates when making the final fee award. Were the Court to have used a rate of $500 for all of his time, the total fee award would increase by $172,446. Defendants maintain that Mr. Shaw incorrectly assumes that the Court intended to use his most recent rate to calculate the entirety of his award, notwithstanding the Court's clear intention to award him rates "actually requested" in his various filings. Defs.' Opp'n Br. at 10. The Court agrees.

The Court left "intact" the hourly rates provided in counsels' fee petition "and amendments thereto." March 27, 2015, Ruling at 10. The Court specifically noted that Plaintiffs had amended a number of times their initial fee application and that these amendments "[did] not each reflect adjustments to the hourly rates for past billing and thus do not account for applicable changes in prevailing market rates." *Id.* at 9–10; *see also id.* at 3 (citing to the fee petition, its amendment, and subsequent supplements): *id.* at 10 (same). The Court determined that, although the rates Plaintiffs sought—*i.e.*, "varying market rates from over the last four years"—were excessive and did not reflect the "then-applicable prevailing market rates" at "any particular time," it would not make a downward adjustment of twenty percent to correct for inflated rates because any such adjustment would be offset by the complementary upward adjustment "to all of counsel's past billing to the now-higher prevailing market rates" to account for the time-value-of-money that an award of interest would cover. *Id.* at 10. *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 88 (2d Cir. 1998) ("Whenever the district court augments or reduces the lodestar figure it must state its reasons for doing so as specifically as possible." (citing *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 99 (2d Cir. 1997)).

The Court declined to adjust "all of counsel's past billing" one way or the other, and the Court declines to do so now.

### C. Compensable Time on the Fees Petition

Finally, Mr. Shaw argues that the Court erroneously counted approximately 175 hours as time expended on the liability phase of the litigation when, in fact, these were hour spent on the fee petition. The Court disagrees.

The Supreme Court has instructed that "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (citation omitted). As noted above, again, on a motion for reconsideration, the issue is whether Mr. Shaw can "point to controlling decisions or data that the [C]ourt overlooked" in giving effect to this principle of rough justice. *Shrader*, 70 F.3d at 257.

Defendants argue that this argument about the alleged erroneous counting of time does not merit reconsideration because Mr. Shaw has failed to demonstrate how he reached such a conclusion, and the Court therefore should not be required to do it. *See* D. Conn. L. Civ. R. 7(a)(3) ("Nothing in this Rule shall require the Court to review portions of the record in response to a motion, where the moving and opposition papers do not make specific reference to such portions of the record."); *Colon v. Metro-N. Commuter R.R. Co.*, No. 3:13-cv-00325 (JAM), 2018 WL 2316728, at *4 (D. Conn. May 22, 2018) (rejecting the plaintiffs' argument for a new trial given on the ground that their "vague complaints" failed to quote or cite any portions of the argument transcript, consistent with D. Conn. L. Civ. R. 7(a)(3)); *Hubert v. Connecticut Dep't of Correction*, No. 3:14-cv-476 (VAB), 2018 WL 1582508, at *16 (D. Conn. Mar. 30, 2018)

(declining to consider statements in the plaintiff's statement of material fact and supporting affidavit that do not cite to the record to support the proposition the plaintiff asserted).

Absent such a showing and in due regard for her "superior understanding of the litigation," the Court declines to reconsider Judge Burns's ruling. *Fox*, 563 U.S. at 838.[3]

The motion therefore is denied.

## IV. CONCLUSION

For the reasons discussed above, the motion is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 31st day of August, 2018.

                                /s/ Victor A. Bolden
                                VICTOR A. BOLDEN
                                UNITED STATES DISTRICT JUDGE

---

[3] The Court notes that this decision, dated March 27, 2015, one of the last in Judge Burns's long and distinguished career with the District of Connecticut, which came to a close when she retired on March 31, 2015, reflects the judgment and care in which she addressed all of the issues to come before her.